AF Approval _CB for NA_               Chief Approval _CB_

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                              CASE NO.  6:22-cr-26-CEM-DCI

WILLIAM DANIEL LEONARD

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B.

Handberg, United States Attorney for the Middle District of Florida, and the

defendant, William Daniel Leonard, and the attorney for the defendant, David Haas,

Esq., mutually agree as follows:

### A.   Particularized Terms

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Indictment. Count One charges the defendant with using a facility and means of

interstate commerce to attempt to entice an individual who the defendant believed

had not attained the age of 18 years, to engage in sexual activity, in violation of 18

U.S.C. § 2422(b).

2.   Minimum and Maximum Penalties

Count One is punishable by a minimum mandatory term of at least 10

years up to life of imprisonment, a maximum fine of not more than $250,000, a term

of supervised release of no less than 5 years up to life, and a special assessment of

Defendant's Initials 

$100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are as follows:

First:    The Defendant knowingly intended to persuade, induce, entice, or coerce an individual who had not attained the age of 18 years to engage in sexual activity, as charged;

Second:    The Defendant used a means or facility of interstate commerce to do so;

Third:    At the time, the Defendant believed that the individual was less than 18 years old;

Fourth:    If the sexual activity had occurred, one or more of the individuals engaging in sexual activity could have been charged with a criminal offense under the law of Florida; and

Fifth:    The Defendant took a substantial step towards committing the offense.

4.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with

Defendant's Initials _WDh_                2

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

    5.    <u>Guidelines Sentence</u>

        Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will

recommend to the Court that the defendant be sentenced within the defendant's

applicable guidelines range as determined by the Court pursuant to the United States

Sentencing Guidelines, as adjusted by any departure the United States has agreed to

recommend in this plea agreement.  The parties understand that such a

recommendation is not binding on the Court and that, if it is not accepted by this

Court, neither the United States nor the defendant will be allowed to withdraw from

the plea agreement, and the defendant will not be allowed to withdraw from the plea

of guilty.

    6.    <u>Acceptance of Responsibility - Three Levels</u>

        At the time of sentencing, and in the event that no adverse information

is received suggesting such a recommendation to be unwarranted, the United States

will recommend to the Court that the defendant receive a two-level downward

adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The

defendant understands that this recommendation or request is not binding on the

Court, and if not accepted by the Court, the defendant will not be allowed to

withdraw from the plea.

Defendant's Initials WDL        3

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2428, whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following:  A Gray Alcatel Flip-Style phone, which asset was involved in and used to facilitate the commission of the offense charged in Count One.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural

Defendant's Initials _WDL_                    4

challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

Defendant's Initials _WJL_                    5

The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be

Defendant's Initials  _WDL_                    6

binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

     8.    <u>Abandonment of Property – Phones and Electronic Devices</u>

     Defendant acknowledges that he has an ownership interest in the following items of property that are in the lawful custody of the United States: a LG Cellular Telephone, Model Number LG-L158VL, (IMEI) 358007086359406; a Lenovo Laptop Computer, Model Name 81A7, Serial Number YDO4HOSE; a Sandisk Thumb Drive, Serial Number BM2007581594.

     Defendant understands that he has the right and opportunity to claim the listed property.  Defendant hereby knowingly and voluntarily waives all right, title, and interest in the listed property. Defendant waives, releases, and withdraws any claim that Defendant has made with respect to the listed property, and waives and releases any claim that Defendant might otherwise have made to the listed property in the future.

     Defendant consents to the vesting of title to the listed property to the United States Government, pursuant to Title 41, Code of Federal Regulations, Section 128-48.102-1. Defendant also consents to the destruction of the property, or other disposition of the property in accordance with law, and without further notice to defendant.

     Defendant waives any right Defendant might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the Government might take, in its sole discretion, to carry out the

Defendant's Initials  _WDL_      7

abandonment, disposition, and/or destruction of the listed property. Defendant's

waiver includes, without limitation, all common law, statutory, and constitutional

claims or challenges, on any grounds, arising at any time from, or relating to, the

seizure, abandonment, disposition, and destruction of the listed property, including

any such claim for attorney's fees and litigation costs.

Defendant further agrees to hold the United States of America, its

agents and employees, harmless from any claims whatsoever in connection with the

seizure, abandonment, disposition, and destruction of the listed property.

9.     Notice of Possibility of Remand Upon Entry of Guilty Plea

The defendant is advised that a finding of guilt will subject the

defendant to the mandatory detention provision of 18 U.S.C. § 3143(a)(2) and that

the defendant will be remanded to the custody of the U.S. Marshals pending

sentencing unless 18 U.S.C. § 3143(a)(2)(A) & (B) or 18 U.S.C. § 3145(c) applies.

**B.     Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or

in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any

victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18

U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to

any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to

all counts charged, whether or not the defendant enters a plea of guilty to such

counts, and whether or not such counts are dismissed pursuant to this agreement.

Defendant's Initials _WJL_                    8

The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.    <u>Supervised Release</u>

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United

Defendant's Initials  WDL           9

States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

4.   <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit

Defendant's Initials WDL                    10

reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

   5.   Sentencing Recommendations

      It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

   6.   Defendant's Waiver of Right to Appeal the Sentence

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court

Defendant's Initials WDL          11

erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

8.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

9.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any

Defendant's Initials WDL                     12

discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials WDL                          13

10.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the below "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

11.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

12.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this   17th   day of January 2023.


_____
William Daniel Leonard
Defendant

_____
David Haas, Esq.
Counsel for the Defendant


ROGER B. HANDBERG
United States Attorney

_____
Terry B. Livanos
Assistant United States Attorney

_____  for
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division


Defendant's Initials WDL          14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO.  6:22-cr-26-CEM-DCI

WILLIAM DANIEL LEONARD


## PERSONALIZATION OF ELEMENTS

**Count One:**

First:      Between on or about November 21, 2021, to December 7, 2021, did you knowingly intended to persuade, induce, entice, or coerce an individual who had not attained the age of 18 years to engage in sexual activity?

Second:   Did you use the internet which is a means or facility of interstate commerce to do so?

Third:    At the time you did so, did you believe that the individual was less than 18 years old?

Fourth:   If the sexual activity had occurred, could you have been charged with a criminal offense under the law of Florida?

Fifth:    Did you take a substantial step towards committing the offense?


Defendant's Initials _WDL_                    15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 6:22-cr-26-CEM-DCI

WILLIAM DANIEL LEONARD


FACTUAL BASIS

The defendant, William Daniel Leonard ("Leonard"), between on or about November 12, 2021, through December 7, 2021, did knowingly attempt to persuade, induce, entice, or coerce an individual who had not attained the age of 18 years to engage in sexual activity by using the internet, which is a means of interstate commerce. To do so, Leonard, using the email address Magnumxl@onionmail.org, responded to a website post which was placed in room called "childlovers" by an undercover agent ("UC") on a darknet website.  The room "childlovers" is where numerous posts are placed in regard to the exploitation of children. The post by the UC read:

> *"Hey all anbody into real life. Might be able to help out voyeur dad likes to watch. Hit us up or good luck in ur search."*

The UC had also provided an email address for anyone to respond to the UC's posting in the chat room.

On November 12, 2021, the UC received an email from Leonard, who was using the email address of Magnumxl@onionmail.org, stating:

Defendant's Initials WDL                          16

> *"Hello, I saw you add on the (xxxx) site about you sharing your 13 yo girl. That sounds fuckin great and I'm as serious as you can get. However I need to ask 2 questions. 1) What state or part of the country are you in?2) Can you think (no matter how small) anything that would prove your not an law enforcement officer or working for an officer (I hope you can understand me asking this question). thank you Leon. "*

On the same date the UC responded to the email from Leonard and replied:

> *"Hey bro if u are that would be cool most just want to talk shit. we live in the southeast us. ifur serious i could send a pie cops can't of my 13 yo baby girl. what r u into."*

Leonard thereafter proceeded to engage in multiple email communications with the UC between November 15, 2021, through and including December 7, 2021, using the email address of Magnumxl@onionmail.org while also sending text messages using a Gray Alcatel Flip-Style cellular telephone, International Mobile Equipment Identifier (IMEI) 015695009389487.  Leonard admitted during his conversations with the UC that he was located in Maryland and agreed to travel to Florida to meet the UC and his minor daughter. Leonard also discussed with the UC over the course of several email exchanges various methods of means of transportation Leonard may take to meet the UC, such as a bus, train, or driving to meet the UC in Florida. Additionally, in Leonard's communications with the UC, Leonard requested that the UC provide photographs of the UC's minor daughter, including one where the daughter was alone and held a sign which said, "Hi Bill". The UC sent two photos as requested to Leonard, including one of the UC in what appeared to be a child's room with the UC's face blurred out. In turn, the UC requested a photo of Leonard, who proceed to send the UC a self-taken photograph

Defendant's Initials WDL                17

to verify his identity.  During continued email exchanges with Leonard, the UC reminded Leonard of the age of the notional minor (13 years old), and gave Leonard an opportunity to change his mind to meet with the purported child, to which Leonard, however, continued in his desire to engage in sexual acts with the minor child and agreed to meet the UC and his minor daughter.

Below are some of the email exchanges between Leonard and the UC from November 15, 2021, to December 2, 2021, that occurred during the course of the commission of the offense charged in the Indictment:

On November 15, 2021, Leonard wrote to the UC:

> *"Hi, a few photos would be nice. me I'm into oral sex (giving and receiving), vaginal sex (in as many different positions as I can manage) and a little anal sex. Nothing too crazy just need to get my rocks off a few times in a row. "*

On November 15, 2021, the UC replied to this email stating:

> *"really don't like sending pies out right off, cause there seems to be a lot who just collect. but i'll send one of us, noting crazy just to prove were real."*

Leonard responded on November 15, 2021, to the UC's email stating:

> *"I understand, there are some people that are too afraid to come out and play and than there are some people who want something for nothing. That bn'ngs me to another question that I need to know before hand, are you doing this just for the fun of it or for monetary gain? Later Bud."*

The UC thereafter replied on November 15, 2021:

> *"no bro my 13 yo baby girl ain't a hooker, ijust enjoy watching her with others."*

On November 28, 2021, the UC emailed Leonard again and once again reminded Leonard of his daughter's age:

Defendant's Initials WDL          18

> *"hey Bill sounds good to us, my girl was askin if you were serious. Bro i get it if it doesn't workout, things come up. up to you we could host. yeah the dates are good just need to know if i need to take her out of school. she is in the 7th grade and if she misses more then 3 days i got to get her a doctors note. lol Bill kinda like to hear how u wanna use her give me something to look forward to. lets us know, how you gettin from the bus stop to the rental car company?"*

On November 28, 2021, Leonard replied:

> *"If your okay with hosting that would save me a bunch of$$. As far as getting to the rental co, there are always taxes sitting at every major bus station. I don't see a need to take her out of school, but I could wrong, so I'll have to leave that up to you. If you really want me to go into some details okay. I want to fuck her mouth till I cum, and make swallow every drop of my cum. Than I want to play with her pussy, lick all around her hole, shove my tough in her hole, than work my way to her clit, I want to lick and suck on her clit, while at the same time I'll have put several fingers in her pussy, and my pinky in ass. When it shes begging and only when she begging will I shove my dick in her pussy, I fuck her in as many different position as I can/we can think of Once I'm close to cumming again I'll lay her on her back puss her legs up close to her head (have her pull on my nipples really hard, the pain just excites me) and than I'll pound her little pussy till I cum. Than after a short rest (maybe o food) than I start over on her tight little ass hole, I'd love to get balls deep in her as. hows that?"*

On November 28, 2021, the UC emailed Leonard advising him of the child's age by saying:*"bro that sounds so hot!!!! yeah we can definitely host. what kind of food do you like? I can pickup ahead of time. even tho she is 13 she is really cool, i know you'll like her. You don't have anything she needs to wony about. she is very clean and want to keep her that way."*

On December 1, 2021, Leonard stated to the UC:

> *"First I want thank you Mark, for the photo. Now as promised I am sending a photo of myself. The last item I want to bring up is this, am always searching though the history of the Groups on Society and I came across a Sept 2019 message were you stated your daughter was 13, however 4 months ago you stated she was still 13. That's not possible, 16 is just fine with me as lone as am going have some fan with beautiful young lady I'm going to be great. But you should delete that 2019 message if you want to keep up the charade. I just have pay my monthly bills than I'll be free to come down there."*

On December 2, 2021, the UC replied to Leonard:

> *"Bill, when i posted at that time she was 11, but found most weren't into her*

Defendant's Initials _WDL_                19

*because they said she was too young. now she is 14 but just turned that age. if you change ur mind that is ok. we get it."*

On December 2, 2021, Leonard responded:

*"No, I'm not changing my mind."*

On December 4, 2021, Leonard requested whether he could have a "3some" with the UC's daughter and another minor. Leonard then proceeded over the next couple days to further coordinate his travel to meet Leonard, the UC, and the UC's daughter.

Between December 6, 2021, and December 7, 2021, Leonard traveled from Maryland to Florida to meet the notional minor and the UC. On December 7, 2021, Leonard arrived at a pre-arranged location to meet the UC in a parking lot in Brevard County, Florida. Leonard had advised the UC that he would be driving a black Chevy Colorado 4x4 with a Maryland license plate. Officers located this vehicle at the prearranged meeting spot and time and the UC approached the vehicle. At this time, the UC observed Leonard as the sole occupant of a black Chevy Colorado 4x4 with a Maryland license plate. The UC was wearing audio recording devices and engaged Leonard in a conversation in which Leonard confirmed he was Bill, the person the UC had been speaking with via email, and that he had been driving the last couple of days, as he had left Maryland and had been sleeping in a truck. The UC asked Leonard "you ready to fuck my little girl", to which Leonard said "yep" and shuck his head in a yes motion. Leonard was thereafter arrested.

Defendant's Initials _WDL_               20

After being placed under arrest, Leonard, in an audio recorded interview, admitted that he knew the person he had met on the day of his arrest, because that person advertises on a website. Leonard further admitted that the advertisement was associated with someone sleeping with that person's girl and admitted his username on this website was "magnumxl." Leonard also admitted he was sent pictures of a girl. Leonard also advised he did send a photograph to the UC, which showed his face. Leonard was then shown a copy of the photograph he sent the UC, which he confirmed was the one he sent. Leonard further admitted that he resides in Maryland, and that he traveled to Florida to meet the girl's father (UC) and the girl. Leonard was asked what the plans were for meeting the girl, to which Leonard stated he wasn't supposed to pay any money to the girl and that the girl's father just wanted to watch him with the child.